ARTHUR R. EDSALL *v.* ROCKLAND PAPER CO., a corporation of the State of Delaware.

(*August* 17, 1937.)

HARRINGTON and RICHARDS, J. J., sitting.

*Ivan Culbertson* (of the office of Hugh M. Morris) for plaintiff.

*Daniel F. Wolcott* (of Ward and Gray) for defendant.

Superior Court for Kent County, Action of Assumpsit, No. 32, July Term, 1937.

HARRINGTON, J., delivering the opinion of the Court:

The plaintiff has filed an affidavit of demand, with a copy of his "book account" sued on attached in accordance with the provisions of *Section* 4648 of the *Revised Code* of 1935, and claims that he is entitled to judgment unless the plaintiff files an affidavit of defense.

Under the defendant's motion, the question for us to determine, therefore, is whether, if an affidavit of defense were filed, and the case should go to trial, the plaintiff's

book account would be competent evidence to prove his claim. *Clements v. Smith,* 1 *Boyce* (24 *Del.*) 16, 76 *A.* 50; 1 *Woolley's Del. Pract.,* § 256.

*Section* 4701 of the *Revised Code* of 1935 provides: "A book of original entries, regularly and fairly kept, shall, together with the oath, or affirmation, of the plaintiff, be admitted in evidence to charge the defendant with the sums therein contained for goods sold and delivered, and other matters properly chargeable in an account.[1] Cash items are not properly so chargeable."

■ Considering the regular entry rule and the shop-book rule as exceptions to the hearsay evidence rule, Professor Wigmore says: "The former (the regular entry rule) involved a general exception in favor of regular entries made in the course of business (but in England only in the course of a specific duty[2]) the entrant being no longer available as a witness on the stand. The latter (the shop-book rule) sanctions the admission of a narrower class of regular entries, that is made by a party to the suit, whether available as a witness or not." 3 *Wig. on Evid.,* § 1517.

■ Theoretically, the two rules are not identical, but they are closely related in principle. 3 *Wig. on Evid.,* § 1536; see, also, *Grossman v. Delaware Electric Power Co.,* 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

Each rule recognizes the two traditional features of hearsay exceptions in general, namely the necessity principle and the circumstantial guarantee of trustworthiness. 3 *Wig. on Evid.,* § 1536; see *Grossman v. Delaware Elec. Power Co.,* 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

---

[1] Whether shop-books are admissible where the goods charged are delivered to a third person, see *Steel v. Yeatman,* 5 *Harr.* 267; *Buckingham v. Murray's Ex'r,* 7 *Houst.* 176, 30 *A.* 779; *Chamb. H. B. on Evid.,* §§ 991, 994.

[2] See *Grossman v. Delaware Electric Power Co.,* 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

■ As in the regular entry rule, the shop-book rule was satisfied in general by evidence of business habit; that is, that the entries offered were original entries, regularly and fairly kept in the course of business, and made at or about the time the transactions recorded took place. 3 *Wig. on Evid.*, §§ 1546-1551; *Chamb. H. B. on Evid.*, §§ 977, 990; *Grossman v. Delaware Elec. Power Co.*, 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

In the early days, the necessity for the application of the shop-book rule was largely, but not entirely, because a party to an action was disqualified as a witness, and, without his books, a small tradesman, without a clerk, was in many cases entirely without evidence to support his claim for merchandise sold and delivered. 3 *Wig. on Evid.*, § 1536; *Smith v. Rentz*, 131 *N. Y.* 169, 30 *N. E.* 54, 15 *L. R. A.* 138.

By reason of modern statutory enactments, permitting a party to an action to testify, that particular element of necessity has largely disappeared, but, notwithstanding that fact, the advantages of the shop-book rule had been too clearly demonstrated to permit it to be abandoned, even in those cases.

■ It seems that the necessity rule involved is not flexible, and, therefore, does not vary in its application to the facts of a particular case. 3 *Wig. on Evid.*, § 1544.

In other words, as was said in *Peck v. Abbe,* 11 *Conn.* 207, 210: "This necessity [for the use of a shop-book as evidence] is not the necessity of the individual case on trial, but of the class of cases to which it belongs. * * * The enquiry is not, whether the party in that case could not have other testimony, but whether the case itself is of the class or character, which will support this action."

■ By statute, in this State cash items are not properly chargeable in a book account under the shop-book rule.[1]

*Section* 4701, *Rev. Code* 1935, *supra;* see, also, *Day v. Thomas,* 2 *Boyce* (25 *Del.*) 488, 82 *A.* 237. That has always been true in most jurisdictions, even independent of statute. 3 *Wig. on Evid.,* § 1539; *Cham. H. B. on Evid.,* § 990. That was because transactions of that nature could ordinarily be proved in some other and better way, and the necessity rule, therefore, did not apply. 3 *Wig. on Evid.,* § 1539.

■ On the same theory of the lack of necessity for that kind of proof, the shop-book rule never applied when there were special terms and provisions to the contract on which the recorded charges were based, and the plaintiff's rights were not merely based on goods sold and delivered, or services rendered on request, because of which an implied contract to pay what they were reasonably worth arose. 3 *Wig. on Evid.,* § 1541; *Chamb. H. B. on Evid.,* §§ 991, 993; *Ward v. Powell,* 3 *Harr.* 379; *McDaniel v. Webster,* 2 *Houst.* 305; *Lewes Hotel Co. v. Hill,* 5 *W. W. Harr.* (35 *Del.*) 212, 162 *A.* 360.

■ In other words, as was said in *Chamberlayne's Hand-Book on Evidence,* § 993: "Books of account are not admissible to prove special contracts, such as are not shown to be, or to be inferred from the entries alone. The admissions of such entries would open wide the door to fraud as a party might make any contract the subject of a book entry."

In *McDaniel v. Webster,* 2 *Houst.* 305, *supra,* applying this rule, the court, in charging the jury, said: "If the work was done under a special agreement such as had been

---

[1] That the books of a bank are, however, admissible to show overdrafts by a depositor, see *People's Nat. Bank v. Rhoades,* 5 *Boyce* (28 *Del.*) 65, 90 *A.* 409; see, also, *Grossman v. Del. Elec. Power Co.,* 4 *W. W. Harr.* (34 *Del.*) 521, 155 *A.* 806.

stated, the plaintiff's book of original entries with the charges and sums contained in his account, was not proper, or sufficient evidence to prove the value of his services, or work done and material furnished by him in building the mill; for in that case, the plaintiff would be confined to his special contract, and could only charge and recover in strict accordance with the terms of it."

This does not mean, however, that book entries can not be used to show the delivery of articles sold under a special contract when that contract has first been proved. *Chamb. H. B. on Evid.*, § 991; 3 *Wig. on Evid.*, § 1541, *note; Ward v. Powell*, 3 *Harr.* 379; *McDaniel v. Webster*, 2 *Houst.* 305; *Bailey v. Harvey*, 60 *N. H.* 152.

From the history of the shop-book rule, it is apparent that originally its scope was quite limited and seemingly only applied to mercantile transactions of a nature that could not ordinarily be proved without the books of the seller. 3 *Wig. on Evid.*, §§ 1537, 1538, 1542; *Chamb. H. B. on Evid.*, § 993; see *Townsend v. Townsend*, 5 *Harr.* 125.

In modern times, the scope of that rule has, however, been materially broadened (*Lewes Hotel Co. v. Hill*, 5 *W. W. Harr.* [35 *Del.*] 212, 162 *A.* 360), and it now applies in most cases to books kept in the regular course of business, where the entries are made at or about the time the transaction recorded took place, where goods, services or materials are furnished by one person to another at the latter's request. *Cham. H. B. on Evid.*, §§ 977, 993; *Jones on Evid., Civil Cases* (2d Ed.) 571.

That broad general rule has been applied in this State since an early date. *Jefferis & Co. v. Urmy*, 3 *Houst.* 653; *Conoway's Adm'r v. Spicer's Executor*, 5 *Harr.* 425; *Ewart v. Morrell*, 5 *Harr.* 126; *Joseph v. Johnson's Executor*, 7 *Penn.* 468, 82 *A.* 30; *Black's Executors v. Reybold*, 3 *Harr.*

528; *McDaniel v. Webster,* 2 *Houst.* 305; *Gregory & Co. v. Bailey's Adm'r,* 4 *Harr.* 256.

But the shop-book rule has never applied to entries in gross covering a considerable period of time, as it is apparent from such entries that they are not regularly made at the time the transaction recorded took place. *Taylor v. Addicks,* 4 *Penn.* 411, 55 *A.* 1010; *McLaughlin v. Weer, Adm'r,* 1 *Marv.* 267, 40 *A.* 1122; *Woolley's Del. Pract.,* §§ 256, 1466.

Notwithstanding what we have already said as to the general scope of the shop-book rule in modern times, the Delaware cases cited in support of that statement, and whatever the particular lack of necessity for the use of the plaintiff's books may be, this court has held that demurrage on a railroad car for delay in unloading it is not properly chargeable in a book account. *Consolidated Stone Co. v. Anderson,* 3 *Boyce* (26 *Del.*) 450, 84 *A.* 1031.

It has, also, held that the charges of an architect for drawing building plans (*Clements v. Smith,* 1 *Boyce* [24 *Del.*] 16, 76 *A.* 50; *Sloan v. Grimshaw,* 4 *Houst.* 326) and of a real estate agent of a five percent commission on the sale of real estate (*Sayers v. Walker,* 5 *Penn.* 400, 61 *A.* 973) are in the same category.

Applying the general principles above stated, the charge in the plaintiff's account, relating to salary due, would seem to be based on the provisions of a special contract between the parties, and for that reason it is not chargeable in the plaintiff's book account.

Regardless of whether in any case itemized charges for commmissions on sales, made at the defendant's request, such as by a commission merchant, could be distinguished from the facts involved in *Sayers v. Walker,* 5 *Penn.* 400, 61 *A.* 973, certainly the fair inference from the plaintiff's book entries as a whole is that he was employed by the

defendant under a contract providing for both a salary and a commission on sales of its products made by him.

The defendant's motion is, therefore, granted, and judgment for the plaintiff, notwithstanding his affidavit of demand, is refused.