**WILMINGTON TRUST COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Virginia J. BARRY, Richard A. Nielsen and Morton Richard Kimmel and Richard Allen Paul, Co-Administrators C.T.A. of the Estate of Josiah Marvel Scott, Deceased, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted Aug. 29, 1978.

Decided Jan. 12, 1979.

---

Walter L. Pepperman, II of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, for defendant Barry.

O'HARA, Judge.

This is an action for conversion alleging a scheme to forge and sell $2,392,931.27 in securities belonging to plaintiff's assignors. The action was originally brought in 1971, at which time a writ of foreign attachment was issued as to Barry, a non-resident defendant, seizing the proceeds ($500,000) of a life insurance policy. The policy, on the life of Josiah Scott, whose executors are defendants in this action, named Barry as sole beneficiary.* Barry's motion to quash the

---

* On April 28, 1976, Barry obtained a judgment in the amount of the insurance policy proceeds in the United States District Court for the Eastern District of Pennsylvania. That judgment is now on appeal to the United States Court of Appeals for the Third Circuit.

writ was granted by order of this Court, 338 A.2d 575 (1975), and that order was affirmed by the Supreme Court, 359 A.2d 664 (1976).

From the date the Supreme Court mandate was received, July 12, 1976, there is no docket entry in this case until April 19, 1978, when defendant Barry moved to dismiss for want of prosecution pursuant to Superior Court Civil Rule 41(e). Shortly thereafter, the plaintiff moved to stay the case pending disposition of a companion action before the Court of Chancery of this State. *Wilmington Trust Co. v. Melville, et al.*, C.A. No. 5077, 1976.

The Chancery action had been filed by plaintiff shortly after the Supreme Court's affirmance of this Court's order quashing the writ of attachment. In it plaintiff sought to impose a constructive trust on the proceeds of the insurance policy, otherwise exempt under 18 Del.C. § 2726. An order of sequestration was issued, and defendant moved to quash. By order of February 25, 1977, affirmed by the Supreme Court on April 10, 1978, the motions to quash sequestration were denied. The Chancery action is in the discovery stage at this time.

The respective motions to dismiss and to stay were consolidated for purposes of briefing and argument and both are before the Court at this time. Defendant contends that plaintiff seeks substantially the same relief in two courts and should be compelled to choose a single forum. Plaintiff attempts to distinguish the respective remedies sought and argues that a stay would simplify issues and promote judicial efficiency. The parties are also at odds as to the effect, under Rule 41, of the twenty-one month gap in activity.

The consolidated motions raise issues related to the concurrent jurisdiction exercised by the Court of Chancery and this Court. "Ever since the rough-and-tumble days of the early chancellors, it has been regarded as a rule of universal jurisprudence . . . that courts must avoid conflicts with each other." *Bayard v. Martin*, Del.Supr., 101 A.2d 329 (1953), cert. denied, 347 U.S. 944, 74 S.Ct. 639, 98 L.Ed.

1092 (1954). Admitting the wisdom of the rule, the Court is hard pressed to find a resolution which respects the litigants' rights yet promotes the efficient administration of justice.

Three alternatives present themselves, one of which can readily be discarded: to deny both motions would work a hardship on defendants, result in needless duplication, and render conflict extremely likely, to say the least. Of the two remaining choices, one, the granting of a stay, would eliminate the horrors of simultaneous adjudication, but would allow plaintiff the luxury of pursuing one action while maintaining a dormant one, based on the same claim, as a future recourse. The remaining alternative, dismissal of this action, would both penalize plaintiff for inactivity here and relieve defendants of the burden of defending two suits in two courts, by dumping the entire case in the lap of Chancery.

█ In weighing the relative hardships imposed by a stay of these proceedings, the Court cannot fail to note that:

> "considerations of policy forbid litigants to patronize at the same time and in the same controversy several courts of concurrent jurisdiction in quest of the most serviceable position." *Esplanade Amusement Co. v. City of Asbury Park*, N.J.Ch., 136 N.J.Eq. 356, 42 A.2d 206 (1945).

The rule in Delaware which implements this policy provides that where a plaintiff is pursuing actions in law and equity at the same time, for the same cause, and for substantially the same relief, he may be compelled by the Court, on application by the defendant, to elect whether he will proceed with one or the other. *Pan American Trade & Investment Corp. v. Commercial Metals Co.*, Del.Ch., 94 A.2d 700 (1953). The rule applies so long as the plaintiff may obtain complete relief in either Court. (The action in *Pan American* was for an accounting of profits, then cognizable in Superior Court or Chancery. Although the plaintiff here proceeds on two distinct theories, the relief sought is substantially the same.)

■ It is settled law in Delaware that when equity obtains jurisdiction over some portion of a controversy, it will go on to decide the whole controversy and give complete and final relief. *Wilmont Homes, Inc. v. Weiler*, Del.Supr., 202 A.2d 576 (1964). This is so even though a purely legal remedy such as a money judgment would be involved. *Id.*; *New Castle County Volunteer Firemen's Assn. v. Belvedere Volunteer Fire Co.*, Del.Supr., 202 A.2d 800 (1964). Equitable relief, including damages, if appropriate, will be tailored to suit the situation as it exists. *Tenney v. Jacobs*, Del. Supr., 240 A.2d 138 (1968).

> "While a court of equity has no jurisdiction to entertain a suit brought purely for compensatory damages, those being awarded at law, it may nevertheless award compensatory damages as a part of the final relief in a cause over which it admittedly has jurisdiction." *Tull v. Terek*, Del.Supr., 147 A.2d 658 (1958); accord: *Anzilotti v. Andrews Construction Co.*, Del.Ch., 115 A.2d 493 (1955).

As recently stated by Vice Chancellor Hartnett:

> "If a controversy is vested with 'equitable features' which would support Chancery jurisdiction of at least a part of the controversy, then the Chancellor has discretion to resolve the remaining portions of the controversy as well." *Getty Refining & Marketing Co. v. Park Oil, Inc.*, Del. Ch., 385 A.2d 147, 149 (1978).

In such cases of concurrent jurisdiction, the Chancery Court has the option of continuing to hear the essentially legal portion of the action or to transfer it to this Court (e. g., for a jury trial) pursuant to 10 Del.C. § 1902. Among the factors noted in *Getty* as weighing on why Chancery should continue to exercise jurisdiction are: to resolve factual issues; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law. See also 1 *Pomeroy's Equity Jurisprudence* (5th Ed.) §§ 175, 183. Many, if not all, of these factors are present here.

Ordinarily, the assumption of jurisdiction by Chancery, and apparent ability to give full relief, would not necessarily dictate a dismissal of the action in Superior Court as opposed to a stay of proceedings. However, the Court is here faced with the added circumstances of a record which was silent for twenty-one months. Plaintiff, who might reasonably have sought to reserve his rights by requesting a stay at the time he embarked on his equitable foray, instead refrained from all action until roused by defendant's motion.

■ Defendant invokes the power of the Court to dismiss for want of prosecution under Rule 41(e). That rule was interpreted in *Landes v. Wolf*, Del.Supr., 96 A.2d 344 (1953) to mean that a party may file a motion under the rule immediately upon the expiration of the one year period of inaction. Here, as in the *Landes* case, the notice provision was apparently not complied with by the Prothonotary, and defendant does not seek to invoke the "automatic dismissal" provision. Instead, defendant seeks a "discretionary dismissal" by the Court pursuant to the final sentence of Rule 41(e), as sanctioned by *Landes*.

■ The Court in *Landes* disagreed with a construction of the rule which would place a burden on the party responsible for the delay to make an affirmative showing tending to excuse its inaction. Instead, the Court held that

> "mere inaction for a year is in itself insufficient to support such a motion, and . . . the moving party must show something more to induce the Court to act." 96 A.2d at 346.

On the other hand, "want of prosecution" does not mean that the plaintiff must have taken positive steps to delay or prevent trial. *Bendix Aviation Corp. v. Glass*, E.D. Pa., 32 F.R.D. 375 (1962), aff'd. 3rd Cir., 314 F.2d 944 (1963), cert. denied 375 U.S. 817, 84 S.Ct. 51, 11 L.Ed.2d 52 (1963). The purpose of rules such as Rule 41(e) is to dispose of pending cases where possible, not merely to permit litigants to maintain a "faint spark of life in their litigation." *Rovner v. Warner Bros. Pictures, Inc.*, E.D.Pa., 29 F.R.D. 488 (1962).

■ The showing required by *Landes v. Wolf*, supra, has been made here. Plaintiff virtually abandoned this action in pursuit of equitable remedies, without then seeking a stay of proceedings. Defendants thus faced the lingering possibility of actions on two fronts. In addition, considerations of judicial economy mitigate against further involvement of this Court.

Normally, dismissal is regarded as a harsh penalty, and courts are reluctant to deprive litigants of a forum. See, e. g., *Glo Co. v. Murchison and Co.*, 3rd Cir., 397 F.2d 928 (1967), cert. denied, 393 U.S. 939, 89 S.Ct. 290, 21 L.Ed.2d 276 (1968). However, under the unusual circumstances present here, plaintiff is not deprived of substantive rights by dismissal. In fact, due to the power of Chancery to grant broad relief in the matter, it is difficult to see how plaintiff is prejudiced at all.

Therefore, it is the Court's opinion that plaintiff's motion for a stay of proceedings in Superior Court should be denied; and that defendant Barry's motion to dismiss the Superior Court action for want of prosecution should be granted, without prejudice.

IT IS SO ORDERED.